UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| DOMINGO ROBLEDO, § | | |
| Institutional ID No. 561997, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. |
| § | | 1:11-CV-077-BL |
| RICHARD G. LEAL, *et al.*, § | | ECF |
| § | | |
| § | | |
| Defendants. § | | Assigned to U.S. Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on April 18, 2011 (Doc. 1). He alleges that his rights under the United States Constitution and under federal and state law were violated by staff members at the French Robertson Unit ("Robertson Unit") of the Texas Department of Criminal Justice - Institutional Division ("TDCJ") and by various TDCJ officials, who subjected him to a visual body cavity search, retaliated against him, and violated his right to free exercise of religion under Federal and State law. The Defendants in this case include Richard G. Leal, Richard D. Daniel, Timothy Hooper, Charles S. Hendrix, Susan Wilburn, and Edward L. Wheeler.

This matter was reassigned to the United States Magistrate Judge on April 27, 2011 (Doc. 5). The court entered an Order Setting Evidentiary Hearing on July 29, 2011 (Doc. 12), setting an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) and 28 U.S.C. § 1915. The court also entered an order on May 24, 2011 (Doc. 10) requiring TDCJ officials to provide authenticated copies of Plaintiff's records relevant to the claims in Plaintiff's complaint.

Plaintiff consented to having the United States Magistrate Judge conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c) in his complaint.

Pursuant to 28 U.S.C. § 1915A, the court has conducted a review of Plaintiff's complaint as supplemented by his testimony at the evidentiary hearing in this case, as well as Plaintiff's various additional written documents and makes the following report and recommendation to the United States District Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, as developed by his testimony, Plaintiff claims that:

1. Plaintiff has been confined to the Robertson Unit during all times relevant to the claims in his complaint.

2. Plaintiff is a Christian. He believes that he should never be unclothed except before his wife. He attends various worship services in the unit chapel.

3. On December 13, 2009, Richard D. Daniel, Timothy Hooper, and Linda H. Strength told approximately 25 inmates that the number of inmates permitted to attend chapel was limited.

4. A week later, chairs were removed from the chapel, thereby subsequently limiting the number of inmates who would attend chapel services.

5. On December 19, 2009, in the 4D-wing 1 section dayroom, the male Defendants subjected Plaintiff and the other inmates present to a visual cavity strip search. These inmates had attended chapel service.

6. On December 20, 2009, Plaintiff and 50 other inmates were subjected to visual cavity searches upon exiting a service in the chapel. Two female officers, also Defendants, were present. In addition, women and children entering the visiting room may have been able to observe the inmates getting dressed as they left the chapel.

7.      Plaintiff filed a grievances on December 24, 2009 and on February 1, 2010, regarding the strip searches on December 19 and 20, 2009. His grievances were denied by Leal and Wilborn.

Plaintiff is seeking declaratory and injunctive relief and an award of damages.

## II.    ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted. These provisions thus apply to this *in forma pauperis* prisoner civil rights action. *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The court is authorized *sua sponte* to test whether the proceeding is frivolous or malicious even before the service of process or before an answer is required to be filed. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d 179 (use of an evidentiary hearing).

The court has reviewed Plaintiff's arguments and claims in his complaint and testimony to determine whether Plaintiff's claims present grounds for dismissal or present cognizable claims which require the Defendants to answer and the case to proceed.

**A.     Plaintiff's constitutional claims**

In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

Plaintiff alleges that the Defendants have violated his right to free exercise of religion. He alleges that he believes in modesty and should not be subjected to strip searches, believing that men should only be unclothed fully in front of their wives. Plaintiff argues that in order to exercise his religion, he must not be subjected to strip searches, particularly strip searches in front of other inmates, guards, or female employees. Plaintiff argues that under the Religious Land Use of Institutionalized Persons Act ("RLUIPA"), and the Texas Religious Freedom Restoration Act ("TRFRA"), Defendants are required to use the least restrictive means of limiting free exercise of religion.

Prisoners retain those First Amendment rights that are consistent with their status as prisoners or with the legitimate penological objectives of the prison. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). While imprisonment "necessarily entails a loss of manifold rights and liberties," a prisoner's right to practice his religious beliefs is protected. *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992). This right is, however, subject to reasonable restrictions and limitations necessitated by penological goals. *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). A prisoner "is not free to do that which he might wish to do, nor may he do allowable things at a time and in a manner he might prefer." *Muhammad*, 966 F.2d at 902. Several factors are relevant in determining whether a prison regulation infringes on an inmate's constitutional rights: (1) is there a valid, rational correlation between the prison regulation and the legitimate governmental interest advanced; (2) are there alternative means of exercising the rights that remain available to the inmates; and (3) what is the impact of an accommodation in favor of the inmate on prison staff, other inmates, and

the allocation of prison resources generally. *Id.* A prisoner's First Amendment rights may be circumscribed when legitimate penological objectives such as institutional order and security outweigh the concerns associated with preservation of the inmate's right. *See Thornburgh v. Abbott*, 490 U.S. 401, 404, 419 (1989). The court will accord "great deference to prison administrators' judgments regarding jail security." *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

The Fifth Circuit has recognized that a prisoner possesses a "constitutional right to bodily privacy" that "is minimal, at best," *Oliver*, 276 F.3d at 745; and "loses those rights that are necessarily sacrificed to legitimate penological needs." *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994). The Fifth Circuit has held that strip searches carried out in non-secluded areas of the prison and in the presence of prison employees of the opposite sex are not unconstitutional and did not constitute an infringement upon the plaintiff's Fourth Amendment rights to be free from an unreasonable search. *Elliott*, 38 F.3d at 190-92. The court noted in *Elliott* that "[t]he Fourth Amendment . . . requires that "searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed." *Id.* (citing *United States v. Lilly*, 576 F.2d 1240, 1244-45 (5th Cir. 1978)). The court explained that "[b]ecause a prison administrator's decisions and actions in the prison context are entitled to great deference from the courts, the burden of proving reasonableness is a light burden.*" Id.*

In *Oliver*, the court noted that it has twice "found that security concerns can justify the strip search of a male inmate in front of a female guard." 276 F.3d at 743. The court upheld the decision of the district court, which found that security concerns justified cross-sex surveillance of prisoners. *Id.* at 746. Various unpublished district court cases in the Fifth Circuit have found that strip searches in the presence of prison officers of the opposite sex did not meet the exaggerated or excessive standard and did not violate a prisoner's Fourth Amendment rights. *See, e.g., Rodgers v. Marquandt*, 2011 U.S. Dist. LEXIS 65644 (N.D. Tex June 20, 2011); *Urias v. Grounds*, 2011 U.S.

Dist. LEXIS 144202 (E.D. Tex. December 15, 2011); *Beasley v. Holman*, 2011 U.S. Dist. LEXIS 74576 (E.D. Tex. July 11, 2011). This may be contrasted with *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 1999), wherein the Fifth Circuit noted that it was possible that the a strip search of a male inmate by a female officer, in the absence of an emergency or extraordinary circumstances, could constitute a viable Fourth Amendment claim. However, in *Moore*, the court stated: "A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs." *Moore*,168 F.3d at 236-237.

The RLUIPA mandates that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a). The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).  A government regulation substantially burdens a "religious exercise" for the purposes of the RLUIPA if it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004).  The Fifth Circuit has found that the RLUIPA does not permit suits against Defendants in their individual capacities. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 329 (5th Cir. 2009). The court accepts Plaintiff's allegations that he believes in modesty and humility and that he is opposed to strip searches. However, Plaintiff's allegations fail to demonstrate that he has been prevented from exercising his religious beliefs or that he has been substantially burdened in exercising his religion.  Plaintiff has not alleged that the strip searches that he and other inmates underwent forced him to choose between

following his religious beliefs or enjoying some generally available, non-trivial benefit. *Adkins*, 393 F.3d at 569- 70. Indeed, Plaintiff testified that after being subjected to strip searches, he continued to participate and attend services in the chapel and otherwise practiced his religious beliefs. Therefore, Plaintiff's free exercise of religion and RLUIPA claims lack an arguable basis in law or fact; this court finds that such claims be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

Plaintiff has filed claims under the TRFRA. The exercise of pendent jurisdiction is discretionary with the district court. *Wong v. Stripling*, 881 F.2d 200, 203-04 (5th Cir. 1989). The court has found that all of Plaintiff's free exercise of religion and RLUIPA claims should be dismissed. Therefore, the court declines to exercise pendent jurisdiction over Plaintiff's state law claims.

Plaintiff further claims that he was subjected to an unreasonable search, specifically a visual body cavity strip search in a non-emergency situation when female correctional officers were present. In a recent decision involving a strip search, the Fifth Circuit stated, "Despite . . . barriers to finding any constitutional right to bodily privacy, several courts of appeal, including this court, have found that prisoners possess such a constitutional right. Even though any such right is minimal, at best, we proceed to the next step of the due process analysis, balancing the intrusion against the state's legitimate penological interests." *Oliver*, 276 F.3d at 745. The Court noted that it had twice found that security concerns can justify the strip search of a male inmate in front of female guards. It held in *Letcher v. Turner*, 968 F.2d 508 (5th Cir. 1992), that prison authorities constitutionally strip searched an inmate during a lockdown following a food fight. Similarly, in *Elliott v. Lynn,* 38 F.3d 188 (5th Cir. 1994), an increased incidence of prison murders, suicides, stabbings, and cuttings justified a shakedown that included mass strip searches in front of female employees. Thus, it appears that a strip search may violate an inmate's constitutional right to bodily

privacy unless the search is justified in the interest of promoting security or other penological interests.

Plaintiff testified that inmates may be subjected to strip searches on various instances while in prison. Plaintiff testified he and a substantial number of other inmates were subjected to strip searches as they were moving from the chapel and near the administrative building. Plaintiff's factual allegations, accepted as true, demonstrate the inherent security interest of the officers and the institution in the situation described.

Plaintiff also alleges that the Defendants violated applicable TDCJ policy in conducting the strip search. The court notes that a prison authority's failure to follow internal rules or administrative procedures does not give rise to any issue of constitutional magnitude as long as minimum constitutional requirements are met. *See, e.g., Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Plaintiff's allegations regarding the removal of chairs from the chapel and the limitation on the number of inmates who may participate in services at the chapel similarly fails. Plaintiff notes in his complaint that a number of inmates were permitted to attend services and that others who were unable to find seats were permitted to sit on the floor. Plaintiff's complaint and allegations demonstrate that the searches and the movement of inmates was related to the inmate count. Moreover, Plaintiff's allegations regarding the removal of chairs fails to demonstrate that he was deprived of any constitutional right.

Plaintiff also alleges that the searches he was subjected to were in retaliation for attending Catholic services in the chapel.

In order to sustain a § 1983 retaliation claim, Plaintiff must establish: (1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Freeman v. Tex. Dep't of Crim. Justice,* 369 F.3d 854, 863 (5th Cir. 2004) (citing *Woods*, 60 F.3d at 1166). The inmate must allege more than his personal

belief that he is the victim of retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). Mere conclusory allegations of retaliation are insufficient to support a claim of retaliation. *Id.* The plaintiff "must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. Plaintiff is required to "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.* The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions. *Id.* at 1166 (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims.

Plaintiff's factual allegations, accepted as true, fail to demonstrate that the requirements of a retaliation claim have been met. He specifically alleges that on December 24, 2009, he filed his step 1 grievance complaining about the December 19 and 20, 2009 searches and the removal of chairs from the chapel. This chronology of events cannot support Plaintiff's claim that the searches were in retaliation for his religious practice or complaints. Moreover, Plaintiff's testimony demonstrates that the alleged retaliatory actions were applied to inmates moving about the prison while counts were being established, to and from areas near the administration building, and were applied to a large number of inmates.

Plaintiff's allegations fail to demonstrate any of the criteria of a retaliation claim. Lacking an arguable basis in law or fact, such claim is **DISMISSED WITH PREJUDICE**.

**B.     Second Motion for Protective Order**

Plaintiff filed a second motion for protective order on February 1, 2012 (Doc. 21). Plaintiff again argues that he should not be subjected to any strip searches in non-emergent situations before anyone, relying on his belief that he should only be unclothed in front of his wife. He notes that he has been subjected to additional strip searches, especially when moving to and from the chapel and received one disciplinary case.

In order to secure a temporary restraining order or preliminary injunction, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that movant will suffer irreparable injury if the restraining order is not issued; (3) that the threatened injury to the movant outweighs any damage the restraining order might cause to the opponent; and (4) that the restraining order will not be adverse to the public interest. *See Southerland v. Thigpen,* 784 F.2d 713, 715 (5th Cir. 1986). The party seeking a restraining order or injunction must prove all four elements and failure to prove any one of them will result in denial of the motion. *See Enterprise Intern, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976).

The court has already found that Plaintiff's allegations fail to state any claims for violation of his right to free exercise of religion or for retaliation. Plaintiff has thus fail to demonstrate a likelihood of success on the merits. The court finds that injunctive relief or issuance of temporary restraining orders or orders for protection are thus not appropriate.

Plaintiff's second motion for protective order filed February 1, 2012 (Doc. 21) is **DENIED**.

### III.   CONCLUSION

Having carefully considered Plaintiff's factual allegations, his testimony, and his claims, the court finds that Plaintiff has failed to state cognizable constitutional claims for unreasonable

searches, for violation of his right to free exercise of religion finds, or for retaliation, and finds that such claims should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

**IT IS, THEREFORE, ORDERED:**

1. Plaintiff's claims against all Defendants for deprivation of free exercise of religion, for unreasonable searches or seizures, and for retaliation are **DISMISSED WITH PREJUDICE AS FRIVOLOUS**;

2. Plaintiff's claims under the RLUIPA are **DISMISSED WITH PREJUDICE AS FRIVOLOUS**;

3. The court **DECLINES** to exercise pendent jurisdiction over Plaintiff's claims under the Texas Religious Freedom Restoration Act;

4. Plaintiff's Second Motion for Protective Order filed February 1, 2012 (Doc. 21) is **DENIED**; and

5. Any pending non-dispositive motions not otherwise addressed above are **DENIED**.

Judgment shall be entered accordingly. This dismissal shall count as a qualifying dismissal under 28 U.S.C. § 1915(g) and *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996). A copy of this order shall be sent by first class mail to all parties appearing *pro se* and to any attorney of record by first class mail or electronic notification.

Dismissal of this action does not release Plaintiff or the institution where he is incarcerated from the obligation to pay any filing fee previously imposed. *See Williams v. Roberts*, 116 F.3d 1126, 1128 (5th Cir. 1997).

DATED this 5th day of April, 2012.

-12-

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**

Case 1:11-cv-00077-BL Document 22 Filed 04/05/12 Page 12 of 12 PageID 139

-12-